[No. S094490, July 18, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
MYRON CARLYLE MOWER, Defendant and Appellant.

458

462

---

## COUNSEL

Gerald F. Uelmen, under appointment by the Supreme Court; and Richard D. Runcie, under appointment by the Court of Appeal, for Defendant and Appellant.

Ann Brick for the ACLU of Northern California as Amicus Curiae on behalf of Defendant and Appellant.

Graham Boyd for American Civil Liberties Union as Amicus Curiae on behalf of Defendant and Appellant.

Mark Rosenbaum for the ACLU of Southern California as Amicus Curiae on behalf of Defendant and Appellant.

Jordan C. Budd for the ACLU of San Diego and Imperial Counties as Amicus Curiae on behalf of Defendant and Appellant.

Daniel N. Abrahamson for the Lindesmith Center-Drug Policy Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Law Office of J. David Nick, J. David Nick and Ean Vizzi for National Organization for the Reform of Marijuana Laws as Amicus Curiae on behalf of Defendant and Appellant.

Massa & Associates and Richard J. Massa for Sudi Pebbles Trippet and Tod Mikuriya as Amici Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Jo Graves, Acting Assistant Attorney General, Stephen G. Herndon and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—Sections 11357 and 11358 of the Health and Safety Code make it a crime to possess and cultivate marijuana.[1]

At the General Election held on November 5, 1996, the electors approved an initiative statute designated on the ballot as Proposition 215 and entitled Medical Use of Marijuana. In pertinent part, the measure added section 11362.5, the Compassionate Use Act of 1996. (Prop. 215, § 1, as approved by electors, Gen. Elec. (Nov. 5, 1996) adding § 11362.5, subd. (a).) Subdivision (d) of section 11362.5 (hereafter section 11362.5(d)) provides that "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

In the present case, although recognizing that section 11362.5(d) provides a defense at trial, the Court of Appeal concluded that the provision does not grant what defendant characterized before that court as a novel kind of "complete" immunity from prosecution. The immunity invoked by defendant would have shielded him not only from prosecution but even from arrest, and would have required the reversal of his convictions for possession and cultivation of marijuana because of the alleged failure by law enforcement officers to conduct an adequate investigation of his status as a qualified patient or primary caregiver before proceeding to effect an arrest.

---

[1]Unless otherwise specified, all statutory references are to the Health and Safety Code.

As we shall explain, we conclude that the Court of Appeal was correct in concluding that section 11362.5(d) does not confer the "complete" immunity from prosecution claimed by defendant. But we also conclude that, in light of its language and purpose, section 11362.5(d) reasonably must be interpreted to grant a defendant a limited immunity from prosecution, which not only allows a defendant to raise his or her status as a qualified patient or primary caregiver as a defense at trial, but also permits a defendant to raise such status by moving to set aside an indictment or information prior to trial on the ground of the absence of reasonable or probable cause to believe that he or she is guilty. In this case, however, defendant did not make such a pretrial motion and, contrary to his claim, he was not deprived by the trial court of an opportunity to do so.

In his briefing in this court, defendant raises a question concerning the allocation and weight of the burden of proof as to the facts underlying the section 11362.5(d) defense. Defendant contends that the People are required to prove the nonexistence of these facts by a preponderance of the evidence or, at most, that the defendant is required merely to raise a reasonable doubt about their existence. Accordingly he claims that the trial court committed reversible error by instructing the jury that he was required to prove the facts supporting the defense by a preponderance of the evidence. Although the Court of Appeal did not expressly address this issue, it did imply, in the course of discussing another issue, that the trial court's instruction was proper. Even though defendant failed to raise this question in the Court of Appeal, it is of general importance for all future cases involving the section 11362.5(d) defense. The People do not argue that the issue is not properly before us, but rather argue its merits directly and at length. Of substantial moment, the pattern jury instruction CALJIC No. 12.24.1 (1999 rev.) (6th ed. 1996) states that the defendant bears the burden of proof as to the underlying facts by a preponderance of the evidence. The general importance of the question counsels us to address it.

We conclude that, under general principles of California law, the burden of proof as to the facts underlying the section 11362.5(d) defense may, and should, be allocated to a defendant, but the defendant should be required merely to raise a reasonable doubt as to those facts rather than to prove them by a preponderance of the evidence. Thus, we conclude that the trial court's instruction in this case, requiring defendant to prove the underlying facts by a preponderance of the evidence, not only was erroneous but also reversible because it went to the heart of the case against defendant.

Accordingly, we conclude that we must reverse the judgment of the Court of Appeal and order the cause to be remanded to the trial court for a new trial before a properly instructed jury.[2]

I

On December 16, 1997, the People charged defendant Myron Carlyle Mower by information with the crimes of possession and cultivation of marijuana in violation of sections 11357 and 11358. Defendant pleaded not guilty.

At trial before a jury, the evidence, viewed in the light most favorable to the resulting convictions, established the following.

On February 25, 1997, deputies in the Tuolumne County Sheriff's Department conducted a search of defendant's residence, while he was present, pursuant to the conditions of probation that had been imposed on him following a prior conviction for the crime of cultivation of marijuana. Defendant was a patient who suffered from "diabetes and all its complications," including blindness and intractable nausea and consequent weight loss, and often was hospitalized as a result; indeed, as the People expressly acknowledged, defendant was "extremely" ill. Furthermore, defendant possessed and cultivated marijuana on the recommendation of a physician, who advised him to use the substance "to control his nausea and maintain his weight." In the course of their search, the deputies found seven marijuana plants. In response to defendant's claim that he was a qualified patient under section 11362.5(d), the deputies made an investigation into the matter, including communicating with his physician, and did not confiscate any of the plants.

Between February 25 and July 11, 1997, the Tuolumne County Sheriff's Department adopted a policy, apparently as an internal guideline for purposes of investigation and arrest, that limited the possession and cultivation of marijuana by a qualified patient or primary caregiver under section 11362.5(d) to three plants.

On July 11, 1997, deputies conducted another probation search of defendant's residence, this time while he was in a hospital because of complications arising from diabetes. Upon finding 31 marijuana plants at the residence, the deputies left three plants there in accordance with the three-plant

---

[2]In *United States v. Oakland Cannabis Buyers' Cooperative* (2001) 532 U.S. 483 [121 S.Ct. 1711, 149 L.Ed.2d 722], the United States Supreme Court held that there was no "medical necessity" defense under the Controlled Substances Act (21 U.S.C. § 801 et seq.), which prohibits the manufacture and distribution of various drugs, including marijuana. The court's holding, which involves the interpretation of federal law, has no bearing on the questions before us, which involve state law alone.

policy, and confiscated the remaining 28. Later that day, a deputy interviewed defendant in the hospital. There, defendant stated that he kept the marijuana plants for himself and for two other persons who were "patients" with "prescriptions"—"[o]ne's a lady about sixty years old . . . from Britain" who "doesn't know anybody in California," and "the other one . . . is just kind of a dumb, dumb person"; defendant refused to "giv[e] up any names until I ask them if they want to be hassled." Weeks later, defendant was arrested.

At trial, defendant testified that he kept the 31 marijuana plants for himself. Defendant denied the truth of his hospital statement concerning the two other persons, whom he continued to refuse to name, claiming that he made the statement under the influence of various medications that he then was receiving. Defendant testified that he anticipated the plants would yield a harvest of about five pounds, which would supply him for a year at his rate of consumption of approximately eight grams a day. Defendant called an expert witness who testified, based on agricultural and other assessments and projections, that the plants probably would yield a harvest of 4.35 pounds, well below the six pounds that he said the federal government supplies yearly to patients in its Investigational New Drug program. The People called an expert witness who testified, based on different agricultural and other assessments and projections, that the plants would yield a harvest of between 31 and 62 pounds.

After the presentation of evidence, the trial court instructed the jury on the crimes of possession and cultivation of marijuana. It also instructed on the section 11362.5(d) defense, based on defendant's claim that he was a qualified patient, without any reference to a qualified primary caregiver.

After deliberations, the jury returned verdicts finding defendant guilty of possession and cultivation of marijuana. The trial court rendered a judgment that, among other things, suspended imposition of sentence and placed defendant on probation for five years under specified conditions.[3]

The Court of Appeal affirmed. Declining "to apply . . . principles of waiver" as urged by the People, it considered the claim, raised by defendant for the first time on appeal, that section 11362.5(d) grants a defendant "complete" immunity from prosecution, shielding him not only from prosecution but even from arrest, and requiring reversal of his convictions

---

[3]What we treat as the trial court's judgment was an order suspending imposition of sentence and placing defendant on probation. Such an order is deemed a judgment for the limited purpose of appeal. (Pen. Code, § 1237, subd. (a); *People v. Cook* (1975) 13 Cal.3d 663, 666-667, fn. 1 [119 Cal.Rptr. 500, 532 P.2d 148].)

because of the alleged failure by law enforcement officers to conduct an adequate investigation prior to his arrest. Although the Court of Appeal recognized that section 11362.5(d) allows a defense at trial, it concluded that the provision does not grant any such immunity from prosecution. The Court of Appeal also rejected a claim by defendant that the trial court erred by failing to instruct the jury on a section 11362.5(d) defense based on a theory that he was a qualified primary caregiver, determining, among other things, that such an instruction would not have been supported by substantial evidence.

We granted defendant's petition for review, subsequently limiting the issue before us to a determination of the meaning and effect of section 11362.5(d).

## II

■ The initial question that we address in this case is whether section 11362.5(d) grants a defendant "complete" immunity from prosecution, an immunity that assertedly would require reversal of a conviction for possession or cultivation of marijuana whenever law enforcement officers fail to conduct an adequate investigation of the defendant's status as a qualified patient or primary caregiver prior to his or her arrest. As noted, the Court of Appeal rejected the contention that section 11362.5(d) grants any such "complete" immunity from prosecution.

Proposition 215 added section 11362.5, which provides in its entirety:

"(a) This section shall be known and may be cited as the Compassionate Use Act of 1996.

"(b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:

"(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

"(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician *are not subject to criminal prosecution or sanction.*

"(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

"(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.

"(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

"*(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.*

"(e) For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (Italics added.)

In his briefing in the Court of Appeal, defendant contended that in addition to allowing a defendant to raise his or her status as a qualified patient or primary caregiver as a defense at trial, section 11362.5(d) grants what defendant characterized as a "complete" immunity from prosecution. In advancing this claim, defendant asserted that section 11362.5 as a whole imposes an obligation on law enforcement officers to "investigate first, arrest later": Such officers "must determine if a person is cultivating or possesses marijuana," "if that person represents that he/she is" a qualified patient or primary caregiver, and "how much [marijuana] can be grown or possessed in relation to the actual medical needs of" the person. Because, in defendant's view, no such officer conducted an investigation of this kind prior to his arrest, he maintained that the "complete" immunity from prosecution that he assertedly was granted by section 11362.5(d) requires reversal of his convictions.

We agree with the Court of Appeal that section 11362.5(d) does not grant any sort of "complete" immunity from prosecution that would require reversal of defendant's convictions. To be sure, law enforcement officers must have probable cause before they lawfully may arrest a person for any crime. (See, e.g., *People v. Campa* (1984) 36 Cal.3d 870, 879 [206 Cal.Rptr. 114,

686 P.2d 634]; see also Pen. Code, § 836.) Probable cause depends on all of the surrounding facts (see, e.g., *People v. Campa, supra,* 36 Cal.3d at p. 879), including those that reveal a person's status as a qualified patient or primary caregiver under section 11362.5(d). But contrary to defendant's position, the requirement that law enforcement officers have probable cause for an arrest does not mean that section 11362.5(d) must be interpreted to grant such persons immunity from arrest. It is well established that immunity from arrest is exceptional, and, when granted, ordinarily is granted expressly. (See generally 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 10, pp. 208-209, citing, among other provisions, Pen. Code, § 1334.4 [providing that "[i]f a person comes into this State in obedience to a subpoena . . . , he shall not, while in this State pursuant to the subpoena . . . , be subject to arrest . . . in connection with matters which arose before his entrance into this State under the subpoena"].) Plainly, section 11362.5(d) does not expressly grant immunity from arrest.

Neither can section 11362.5(d) reasonably be read to grant immunity from arrest by implication. As the proponents of Proposition 215 declared in their rebuttal to the argument of the measure's opponents: "Police officers can still arrest anyone for marijuana offenses." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) rebuttal to argument against Prop. 215, p. 61.) Even when law enforcement officers believe that a person who "possesses or cultivates marijuana" is a "patient" or "primary caregiver" acting on the "recommendation or approval of a physician," they may—as in this case—have reason to believe that that person does not possess or cultivate the substance "for the personal medical purposes of the patient" (§ 11362.5(d)).

Thus, we conclude that section 11362.5(d) does not grant any immunity from arrest, and certainly no immunity that would require reversal of a conviction because of any alleged failure on the part of law enforcement officers to conduct an adequate investigation prior to arrest.

The conclusion that section 11362.5(d) does not grant a defendant the type of "complete" immunity from prosecution urged by defendant below, however, does not signify that the provision does not grant any immunity from prosecution at all.

Certain statutory provisions have been recognized as granting defendants limited immunity from prosecution. (See generally *People v. Backus* (1979) 23 Cal.3d 360, 381 [152 Cal.Rptr. 710, 590 P.2d 837]; *People v. King* (1967) 66 Cal.2d 633, 645 [58 Cal.Rptr. 571, 427 P.2d 171].)

One example of a grant of limited immunity from prosecution is found in subdivision (n) of section 602 of the Penal Code (hereafter Penal Code

section 602(n)), which makes it a crime to trespass on another's property and then provides that its terms "shall not be applicable to persons engaged in lawful labor union activities . . . ." (See *In re Catalano* (1981) 29 Cal.3d 1, 12, fn. 12 [171 Cal.Rptr. 667, 623 P.2d 228].) Such a statutory provision bars prosecution by rendering noncriminal certain conduct that otherwise would be criminal.

Another example of a grant of limited immunity from prosecution is seen in subdivision (b) of section 12924 of the Insurance Code (hereafter Insurance Code section 12924(b)), which provides that, as a general matter, "no individual shall be prosecuted or be subjected to punishment for" any crime "concerning which he [or she] is . . . compelled" by the Insurance Commissioner "to testify or produce" other evidence. (See *People v. King, supra*, 66 Cal.2d at p. 637.) Such a statutory provision bars prosecution for reasons extrinsic to the criminality of the underlying conduct—here, because of compelled self-incrimination.

A statutory provision that grants a defendant a limited immunity from prosecution may serve as a basis for a motion to set aside an indictment or information prior to trial, as well as a basis for a defense at trial. (*People v. Backus, supra*, 23 Cal.3d at pp. 380-381; *People v. McGee* (1977) 19 Cal.3d 948, 968, fn. 9 [140 Cal.Rptr. 657, 568 P.2d 382]; accord, *People v. King, supra*, 66 Cal.2d at p. 645.)

As we shall explain, we believe that section 11362.5(d) reasonably must be interpreted to grant a defendant a limited immunity from prosecution, which not only allows a defense at trial, but also permits a motion to set aside an indictment or information prior to trial.

By its terms, section 11362.5(d) provides that sections 11357 and 11358, which criminalize the possession and cultivation of marijuana,[4] "shall not apply to a patient, or . . . a patient's primary caregiver, who possesses or

---

[4]Section 11357 provides:

"(a) Except as authorized by law, every person who possesses any concentrated cannabis shall be punished by imprisonment in the county jail for a period of not more than one year or by a fine of not more than five hundred dollars ($500), or by both such fine and imprisonment, or shall be punished by imprisonment in the state prison.

"(b) Except as authorized by law, every person who possesses not more than 28.5 grams of marijuana, other than concentrated cannabis, is guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars ($100). Notwithstanding other provisions of law, if such person has been previously convicted three or more times of an offense described in this subdivision during the two-year period immediately preceding the date of commission of the violation to be charged, the previous convictions shall also be charged in the accusatory pleading and, if found to be true by the jury upon a jury trial or by the court upon a court trial or if admitted by the person, the provisions of Sections 1000.1 and 1000.2 of the Penal Code

cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5(d).) Thus, within its scope, section 11362.5(d) renders possession and cultivation of marijuana noncriminal—that is to say, it renders possession and cultivation of the marijuana noncriminal for a qualified patient or primary caregiver.

As is indicated by the text of section 11362.5, quoted above, the purpose informing section 11362.5(d) is twofold: (1) "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of . . . any . . . illness for which marijuana provides relief" (§ 11362.5, subd. (b)(1)(A)); and (2) "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for

shall be applicable to him, and the court shall divert and refer him for education, treatment, or rehabilitation, without a court hearing or determination or the concurrence of the district attorney, to an appropriate community program which will accept him. If the person is so diverted and referred he shall not be subject to the fine specified in this subdivision. If no community program will accept him, the person shall be subject to the fine specified in this subdivision. In any case in which a person is arrested for a violation of this subdivision and does not demand to be taken before a magistrate, such person shall be released by the arresting officer upon presentation of satisfactory evidence of identity and giving his written promise to appear in court, as provided in Section 853.6 of the Penal Code, and shall not be subjected to booking.

"(c) Except as authorized by law, every person who possesses more than 28.5 grams of marijuana, other than concentrated cannabis, shall be punished by imprisonment in the county jail for a period of not more than six months or by a fine of not more than five hundred dollars ($500), or by both such fine and imprisonment.

"(d) Except as authorized by law, every person 18 years of age or over who possesses not more than 28.5 grams of marijuana, other than concentrated cannabis, upon the grounds of, or within, any school providing instruction in kindergarten or any of grades 1 through 12 during hours the school is open for classes or school-related programs is guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars ($500), or by imprisonment in the county jail for a period of not more than 10 days, or both.

"(e) Except as authorized by law, every person under the age of 18 who possesses not more than 28.5 grams of marijuana, other than concentrated cannabis, upon the grounds of, or within, any school providing instruction in kindergarten or any of grades 1 through 12 during hours the school is open for classes or school-related programs is guilty of a misdemeanor and shall be subject to the following dispositions:

"(1) A fine of not more than two hundred fifty dollars ($250), upon a finding that a first offense has been committed.

"(2) A fine of not more than five hundred dollars ($500), or commitment to a juvenile hall, ranch, camp, forestry camp, or secure juvenile home for a period of not more than 10 days, or both, upon a finding that a second or subsequent offense has been committed."

Section 11358 provides: "Every person who plants, cultivates, harvests, dries, or processes any marijuana or any part thereof, except as otherwise provided by law, shall be punished by imprisonment in the state prison."

medical purposes upon the recommendation of a physician are *not subject to criminal prosecution or sanction*" (§ 11362.5, subd. (b)(1)(B), italics added).

We believe that just as a grant of limited immunity from prosecution is found in Penal Code section 602(n), which makes it a crime to trespass on another's property and then provides that its terms "*shall not be applicable* to persons engaged in lawful labor union activities" (italics added; see *In re Catalano, supra,* 29 Cal.3d at p. 12, fn. 12), and just as a grant of limited immunity from prosecution is seen in Insurance Code section 12924(b), which provides that, as a general matter, "no individual *shall be prosecuted or be subjected to punishment* for" any crime "concerning which he [or she] is . . . compelled" by the Insurance Commissioner "to testify or produce" other evidence (italics added; see *People v. King, supra,* 66 Cal.2d at p. 637), a grant of limited immunity from prosecution also must properly be found in section 11362.5(d), which provides that sections 11357 and 11358 "shall not apply to" qualified patients and primary caregivers (§ 11362.5(d)), particularly in view of its purpose of prohibiting "criminal prosecution [and] sanction" of such qualified patients and primary caregivers for such crimes (§ 11362.5, subd. (b)(1)(B)).

It is evident that section 11362.5(d)'s grant of limited immunity from prosecution does not operate, as does that of Insurance Code section 12924(b), for reasons extrinsic to the criminality of the underlying conduct. Rather, it operates, in the manner of Penal Code section 602(n), to render noncriminal certain conduct that otherwise would be criminal.

■ We have held that the prohibition against criminal "prosecut[ion]" and criminal "punishment" found in Insurance Code section 12924(b) "cannot be given its proper effect unless it . . . is recognized as a proper basis for" setting aside an indictment or information. (*People v. King, supra,* 66 Cal.2d at p. 645.) Otherwise, a criminal prosecution hardly could be said to be subject to prohibition at all, but simply could proceed unimpeded to whatever its resolution might be.

■ By parity of reasoning, we now hold that the prohibition against "criminal prosecution" as well as "criminal . . . sanction" (§ 11362.5, subd. (b)(1)(B)) that is implicit in section 11362.5(d) cannot be given its proper effect unless it too is recognized as a proper basis for setting aside an indictment or information.

Proposition 215's ballot pamphlet materials do not speak directly to the issue whether section 11362.5(d) permits a motion to set aside an indictment or information prior to trial. But they say nothing to the contrary. That the

proponents of Proposition 215 stated (in their rebuttal to the argument by the measure's opponents) that section 11362.5(d) "simply gives . . . a defense in court" (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument against Prop. 215, p. 61) does not signify that it allows a defense at trial *but does not permit a motion to set aside an indictment or information prior to trial.* Such a motion broadly would be considered a "defense in court" because, if successful, it would obviate any need for a trial.

■ Generally, in moving to set aside an indictment or information prior to trial based on a grant of limited immunity from prosecution, a defendant must proceed under the common law if the limited immunity operates for reasons extrinsic to the criminality of the underlying conduct (*People v. King, supra,* 66 Cal.2d at pp. 644-645), and may proceed under Penal Code section 995 if the limited immunity operates by rendering noncriminal certain conduct that otherwise would be criminal (see *People v. Backus, supra,* 23 Cal.3d at pp. 380-381).

■ Because the grant of limited immunity from prosecution in section 11362.5(d) operates by decriminalizing conduct that otherwise would be criminal, a defendant moving to set aside an indictment or information prior to trial based on his or her status as a qualified patient or primary caregiver may proceed under Penal Code section 995. ■ To prevail, a defendant must show that, in light of the evidence presented to the grand jury or the magistrate, he or she was indicted or committed "without reasonable or probable cause" to believe that he or she was guilty of possession or cultivation of marijuana in view of his or her status as a qualified patient or primary caregiver. (Pen. Code, § 995, subd. (a)(1)(B), (2)(B).)[5] " ' "Reasonable or probable cause" means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. "Reasonable and probable cause" may exist although there may be some room for doubt.' " (*Lorenson v. Superior Court* (1950) 35 Cal.2d 49, 56-57 [216 P.2d 859], quoting *People v. Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d 344].) Of course, in the absence of reasonable or probable cause to believe that a defendant is guilty of possession or cultivation of marijuana, in view of his or her status as a qualified patient or primary caregiver, the grand jury or the magistrate should not indict or commit the defendant in the first place, but instead should bring the prosecution to an end at that point.

---

[5]Before the grand jury, the prosecutor must present any evidence of which he or she is aware that would exculpate the defendant. (Pen. Code, § 939.71; *Johnson v. Superior Court* (1975) 15 Cal.3d 248, 255 [124 Cal.Rptr. 32, 539 P.2d 792].) Before the magistrate, the defendant may present exculpatory evidence on his or her own behalf. (See Pen. Code, § 866, subd. (a).) Evidence of a defendant's status as a qualified patient or primary caregiver exculpates him or her from guilt of the crimes of possession or cultivation of marijuana, because such a status renders possession and cultivation of marijuana noncriminal.

██ Although we thus conclude that section 11362.5(d) reasonably must be interpreted to grant a defendant a limited immunity from prosecution allowing him or her to move to set aside an indictment or information prior to trial, in the present case defendant did not make any such motion. Defendant claims that the trial court deprived him of an opportunity to do so, but the record does not support his assertion. From all that appears, defendant simply failed to move prior to trial to set aside the information. ██ ██ ██ The trial court did nothing to prevent or hinder him from doing so.[6]

## III

██ As noted, the Court of Appeal recognized that section 11362.5(d) allows a medical defense at trial. In doing so, the Court of Appeal followed *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1543-1551 [66 Cal.Rptr.2d 559], *People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1388-1400 [70 Cal.Rptr.2d 20], and *People v. Rigo* (1999) 69 Cal.App.4th 409, 412-415 [81 Cal.Rptr.2d 624].

We agree that, in light of its language and purpose, section 11362.5(d) must be interpreted to allow a defense at trial. For a defendant to be able to

---

[6]Because defendant did not make *any* motion prior to trial on the basis of his status as a qualified patient or primary caregiver, we need not, and do not, reach the question whether a motion to set aside an indictment or information under Penal Code section 995 is the sole mechanism for raising the issue.

In declining "to apply . . . principles of waiver," as urged by the People, against defendant's claim that section 11362.5(d) grants a defendant "complete" immunity from prosecution, the Court of Appeal stated that "jurisdictional issues can be raised at any time," and implied that such issues include immunity from prosecution. We recognize that we sometimes have spoken of immunity from prosecution as "jurisdictional." (*People v. Backus, supra,* 23 Cal.3d at p. 381; accord, *People v. King, supra,* 66 Cal.2d at p. 645.) In its fundamental sense, "jurisdiction" refers to a court's power over persons and subject matter. (See *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) Less fundamentally, "jurisdiction" refers to a court's authority to act with respect to persons and subject matter within its power. (See *ibid.*) Issues relating to jurisdiction in its fundamental sense indeed may be raised at any time. (See *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 372 [58 Cal.Rptr.2d 458, 926 P.2d 438] [speaking of subject matter jurisdiction]; *People v. Chadd* (1981) 28 Cal.3d 739, 757 [170 Cal.Rptr. 798, 621 P.2d 837] (plur. opn. of Mosk, J.) [same]; *Summers v. Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668] [same].) By contrast, issues relating to jurisdiction in its less fundamental sense may be subject to bars including waiver (i.e., the intentional relinquishment of a known right) (*Cowan v. Superior Court, supra,* 14 Cal.4th at p. 371) and forfeiture (i.e., the loss of a right through failure of timely assertion) (*ibid.*). (See *People v. Williams* (1999) 77 Cal.App.4th 436, 447 [92 Cal.Rptr.2d 1]; *In re Andres G.* (1998) 64 Cal.App.4th 476, 482 [75 Cal.Rptr.2d 285]; *People v. Ruiz* (1990) 217 Cal.App.3d 574, 584 [265 Cal.Rptr. 886].) As made plain in the text, and contrary to the Court of Appeal's implication and defendant's assertion, the limited immunity from prosecution granted by section 11362.5(d) implicates jurisdiction in its less fundamental sense; it surely does not undermine a court's personal or subject matter jurisdiction. Hence, it is subject to bars including waiver and forfeiture.

avoid "criminal prosecution or sanction" (§ 11362.5, subd. (b)(1)(B)) when charged with possession or cultivation of marijuana in violation of section 11357 or 11358, he or she must be able to defend on the ground that these provisions do "not apply" (§ 11362.5(d)) because he or she is a qualified patient or primary caregiver.

Furthermore, ballot pamphlet materials for Proposition 215 expressly acknowledge that section 11362.5(d) allows a defense at trial. In rebuttal to the argument by opponents of Proposition 215 that section 11362.5(d) "will provide new legal loopholes for drug dealers to avoid arrest and prosecution" (Ballot Pamp., Gen. Elec., *supra*, argument against Prop. 215, p. 61), the measure's proponents stated: "Police officers can still arrest anyone for marijuana offenses," including possession and cultivation of the substance in violation of sections 11357 and 11358. (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument against Prop. 215, p. 61.) "Police officers can still arrest anyone who grows too much [marijuana], or tries to sell it." (*Ibid.*) Section 11362.5(d) "simply gives those arrested" for possession or cultivation of marijuana "a defense in court, if they can prove" their status as qualified patients or primary caregivers. (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument against Prop. 215, p. 61, italics omitted.) Accordingly, section 11362.5(d) "would . . . protect" such persons "from criminal penalties for" possession or cultivation of marijuana. (Ballot Pamp., Gen. Elec., *supra*, argument in favor of Prop. 215, p. 60.)

### A

■ Defendant contends that the Court of Appeal erred by rejecting his claim that the trial court improperly failed to instruct the jury on a section 11362.5(d) defense based on a theory that he was a qualified primary caregiver. We disagree.

As the Court of Appeal determined, such an instruction would not have been supported by substantial evidence. For a person to be a qualified primary caregiver, he or she must be "designated" as such by a qualified patient, and must have "consistently assumed responsibility" for the qualified patient's "housing, health, or safety." (§ 11362.5, subd. (e).) The sole evidence relevant to this issue was the statement made by defendant at the hospital, the truth of which he denied at trial, that he kept the 31 marijuana plants not only for himself but also for two other unnamed persons. Even if these two unnamed persons were in fact qualified patients, there was no evidence whatsoever that defendant had been designated by either one as a primary caregiver, or that he consistently had assumed responsibility for either person's housing, health, or safety.

Defendant complains that the trial court deprived him of an opportunity to raise a defense under section 11362.5(d) based on defendant's posttrial contention that he was a qualified primary caregiver. It is true that, in instructing on the section 11362.5(d) defense, the trial court referred only to a qualified patient and not to a qualified primary caregiver. But, as stated, there was no evidence suggesting that defendant had been designated by either one of the two unnamed persons as a primary caregiver or that he consistently had assumed responsibility for either one's housing, health, or safety. The trial court did nothing to deprive defendant of an opportunity to raise such a defense; defendant simply failed to present any evidence to support it.

## B

Defendant next raises a question concerning the allocation and weight of the burden of proof under the defense provided by section 11362.5(d), and the propriety of the trial court's related instruction.

In its charge to the jury, the trial court instructed that defendant bore the burden of proof as to the facts underlying this defense, and that he was required to prove those facts by a preponderance of the evidence.

## 1

We begin our analysis of the question of the allocation and weight of the burden of proof under the defense provided by section 11362.5(d) with the observation that the question involves two related but distinct issues.

The first issue is which party, the People or the defendant, bears the burden of proof as to the facts underlying the defense. Evidence Code section 115 defines "burden of proof" as "the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

The second issue is what is required to be done by the party who bears the burden of proof as to the facts underlying the defense, whether that party is the People or the defendant. Evidence Code section 115 provides that "[t]he burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. . . ."

With regard to the first issue—whether it is the People or the defendant who bears the burden of proof as to the facts underlying the defense—the

answer is not provided by section 11362.5(d) itself, inasmuch as the statute does not expressly allocate any burden of proof as to the underlying facts, either to the People or to the defendant. Rather, as will appear, the answer is provided by the so-called rule of convenience and necessity, which has been articulated and applied in several prior decisions (see, e.g., *People v. Agnew* (1940) 16 Cal.2d 655, 663-667 [107 P.2d 601]; *In re Andre R.* (1984) 158 Cal.App.3d 336, 341-342 [204 Cal.Rptr. 723], and cases cited; see generally 5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, § 525, p. 749).

 The rule of convenience and necessity declares that, unless it is "unduly harsh or unfair," the "burden of proving an exonerating fact may be imposed on a defendant if its existence is 'peculiarly' within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient." (*In re Andre R., supra,* 158 Cal.App.3d at p. 342; accord, e.g., *People v. Agnew, supra,* 16 Cal.2d at pp. 663-667.) The rule often has been invoked when the "exonerating fact" arises from an exception to a criminal statute. (See, e.g., *In re Andre R., supra,* 158 Cal.App.3d at pp. 341-342, citing cases; see also Model Pen. Code & Commentaries, com. 3 to § 1.12, p. 192; *id.,* pp. 192-193, fn. 16.)

 Application of the rule of convenience and necessity supports the conclusion that section 11362.5(d) should be interpreted to allocate to the defendant the burden of proof as to the facts underlying the defense provided by the statute.

First, it would not be unduly harsh or unfair to allocate to the defendant the burden of proving the facts underlying this defense. These facts are that he or she was a "patient" or "primary caregiver," that he or she "possesse[d]" or "cultivate[d]" the "marijuana" in question "for the personal medical purposes of [a] patient," and that he or she did so on the "recommendation or approval of a physician" (§ 11362.5(d)). The existence of these facts is peculiarly within a defendant's personal knowledge, and proof of their nonexistence by the prosecution would be relatively difficult or inconvenient.

Second, section 11362.5(d) constitutes an exception to sections 11357 and 11358, which make it a crime to possess and cultivate marijuana, because section 11362.5(d) provides that sections 11357 and 11358 *"shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician"* (§ 11362.5(d), italics added).

Against this conclusion, defendant argues that section 11362.5(d) allocates to the People the burden of proof as to the facts underlying the defense provided by the statute. In support, defendant attempts to analogize this defense to the statute of limitations, under which the People bear the burden of proof (*People v. Zamora* (1976) 18 Cal.3d 538, 565, fn. 27 [134 Cal.Rptr. 784, 557 P.2d 75]). For present purposes, however, section 11362.5(d) is not analogous to the statute of limitations. Section 11362.5(d) plainly allows a defense for which the rule of convenience and necessity supports allocating to the defendant the burden of proof as to the underlying facts. In contrast, the statute of limitations is self-executing and "is not a mere matter of defense" (1 Witkin & Epstein, Cal. Criminal Law, *supra*, Defenses, § 215, p. 576). The statute of limitations historically has been accorded treatment specific to itself. (See generally *id.*, §§ 214-230, pp. 575-601.) We see no reason to accord the same treatment to section 11362.5(d), which allows a defense like that offered by many other statutory provisions.

With regard to the second issue—what is required to be done by the party who bears the burden of proof as to the facts underlying this defense, whom we have determined to be the defendant—the answer again is not provided by the statute itself, inasmuch as it does not expressly define the weight of the burden of proof. But neither is the answer afforded by the rule of convenience and necessity. ■■■ Although the People rightly claim that the rule of convenience and necessity is "consistent" with requiring the defendant to prove the underlying facts by a preponderance of the evidence (see *People v. Spry* (1997) 58 Cal.App.4th 1345, 1367-1369 [68 Cal.Rptr.2d 691], disapproved on another point by *People v. Martin* (2001) 25 Cal.4th 1180, 1192 [108 Cal.Rptr.2d 599, 25 P.3d 1081]), the rule is just as consistent with requiring the defendant merely to raise a reasonable doubt (see *People v. Agnew, supra*, 16 Cal.2d at pp. 663-667; 5 Witkin & Epstein, Cal. Criminal Law, *supra*, Criminal Trial, § 525, p. 749; see also Model Pen. Code, § 1.12, subds. (2)(a), (3)(c)). To resolve this issue, we accordingly must look elsewhere.

We begin with Evidence Code section 501. That provision states: "Insofar as any statute, except [Evidence Code] Section 522, assigns the burden of proof in a criminal action, such statute is subject to Penal Code Section 1096." (Evid. Code, § 501.) Penal Code section 1096 requires the People to prove the facts establishing a defendant's guilt beyond a reasonable doubt. In contrast, Evidence Code section 522 requires a defendant to prove the facts underlying a defense of insanity by a preponderance of the evidence.

The comment to Evidence Code section 501 by the California Law Revision Commission, which proposed that provision, states in pertinent

part: "[Evidence Code] Section 501 is intended to make it clear that the statutory allocations of the burden of proof . . . are subject to Penal Code Section 1096, which requires that a criminal defendant be proved guilty beyond a reasonable doubt, *i.e.*, that the statutory allocations do not (except on the issue of insanity) require the defendant to persuade the trier of fact of his innocence. Under Evidence Code Section 522, as under existing law, the defendant must prove his insanity by a preponderance of the evidence. [Citation.] *However, where a statute allocates the burden of proof to the defendant on any other issue relating to the defendant's guilt, the defendant's burden, as under existing law, is merely to raise a reasonable doubt as to his guilt.* [Citation.] [Evidence Code] Section 501 also makes it clear that, when a statute assigns the burden of proof to the prosecution in a criminal action, the prosecution must discharge that burden by proof beyond a reasonable doubt." (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 91, italics added; accord, *id.* at pp. 88-89 [com. to Evid. Code, § 500].)

Thus, Evidence Code section 501 provides that, when a statute allocates the burden of proof to a defendant on any fact relating to his or her guilt, the defendant is required merely to raise a reasonable doubt as to that fact.

█ With respect to many defenses, as "ha[s] been and [is] extremely common in the penal law" (Model Pen. Code & Commentaries, com. 3 to § 1.12, p. 192), a defendant has been required merely to raise a reasonable doubt as to the underlying facts.[7] Such defenses relate to the defendant's guilt or innocence. Perhaps most pertinent here are the defense of possession of a dangerous or restricted drug with a physician's prescription, against a charge of unlawful possession of such a drug (*People v. Montalvo* (1971) 4

---

[7]Included are the defense of alibi (*People v. Costello* (1943) 21 Cal.2d 760, 765-766 [135 P.2d 164] [predating Evid. Code, § 501]); the defense of unconsciousness (*People v. Babbitt* (1988) 45 Cal.3d 660, 689-696 [248 Cal.Rptr. 69, 755 P.2d 253]); the defense of duress (*People v. Graham* (1976) 57 Cal.App.3d 238, 240 [129 Cal.Rptr. 31]); any defense justifying, excusing, or mitigating the commission of homicide (*People v. Bushton* (1889) 80 Cal. 160, 164 [22 P. 127] [predating Evid. Code, § 501]); defense of another, against a charge of murder (*People v. Roe* (1922) 189 Cal. 548, 560-561 [209 P. 560] [predating Evid. Code, § 501]); self-defense, against a charge of assault (*People v. Adrian* (1982) 135 Cal.App.3d 335, 337-341 [185 Cal.Rptr. 506]); the defense of reasonable and good faith belief in the victim's consent, against a charge of kidnapping (*People v. Mayberry* (1975) 15 Cal.3d 143, 157 [125 Cal.Rptr. 745, 542 P.2d 1337]); the defense of reasonable and good faith belief in the victim's consent, against a charge of rape (*ibid.*); the defense of intent to marry, against a charge of taking a woman for the purpose of prostitution (*People v. Marshall* (1881) 59 Cal. 386, 388-389 [predating Evid. Code, § 501]); the defense of lawful arrest, against a charge of false imprisonment (*People v. Agnew, supra,* 16 Cal.2d at pp. 664-667 [predating Evid. Code, § 501]); and the defense of exemption under state securities laws, against a charge of violating such laws (*People v. Simon* (1995) 9 Cal.4th 493, 501 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *People v. Figueroa* (1986) 41 Cal.3d 714, 722 [224 Cal.Rptr. 719, 715 P.2d 680]).

Cal.3d 328, 333, fn. 3 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518]); the defense of lawful acquisition of a hypodermic needle or syringe, against a charge of unlawful possession of such an item (*People v. Fuentes* (1990) 224 Cal.App.3d 1041, 1044-1047 [274 Cal.Rptr. 17]); and the defense of prescribing narcotics to an addict under lawful conditions, against a charge of unlawfully prescribing such substances to such a person (*People v. Lawrence* (1961) 198 Cal.App.2d 54, 62 [18 Cal.Rptr. 196] [predating Evid. Code, § 501]). Such defenses relate to the defendant's guilt or innocence *because they relate to an element of the crime in question*. Thus, the defense of possession of a dangerous or restricted drug with a physician's prescription negates the element of *unlawful* possession of such a drug; the defense of lawful acquisition of a hypodermic needle or syringe negates the element of *unlawful* possession of such an item; and the defense of prescribing narcotics to an addict under lawful conditions negates the element of *unlawfully* prescribing such substances to such a person.

■ When a statute allocates the burden of proof to a defendant as to a fact collateral to his or her guilt, however, the defendant may be required to prove that fact by a preponderance of the evidence. (E.g., *People v. Frye* (1998) 18 Cal.4th 894, 967 [77 Cal.Rptr.2d 25, 959 P.2d 183]; *People v. Tewksbury* (1976) 15 Cal.3d 953, 964-965 [127 Cal.Rptr. 135, 544 P.2d 1335].)

■ With respect to only a handful of defenses has the defendant been required to prove the underlying facts by a preponderance of the evidence.[8] Those are defenses that are collateral to the defendant's guilt or innocence. The most prominent is the defense of entrapment. (See *People v. Moran* (1970) 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763].) "[T]he defense of entrapment . . . is not based on the defendant's innocence. The courts have created the defense as a control on illegal police conduct 'out of regard for [the court's] own dignity, and in the exercise of its power and the performance of its duty to formulate and apply proper standards for judicial enforcement of the criminal law.' " (*Id.* at pp. 760-761.) Such defenses are collateral to the defendant's guilt or innocence *because they are collateral to any element of the crime in question*. Thus, the defense of entrapment does

---

[8]Included are the defense of momentary handling of a controlled substance for the sole purpose of disposal, against a charge of possession of such a substance (*People v. Spry, supra,* 58 Cal.App.4th at pp. 1367-1369), and the so-called defense of necessity against a charge of escape from lawful custody (*People v. Waters* (1985) 163 Cal.App.3d 935, 937-938 [209 Cal.Rptr. 661]; *People v. Condley* (1977) 69 Cal.App.3d 999, 1008-1013 [138 Cal.Rptr. 515]). Whether either of these defenses properly requires a defendant to prove its underlying facts by a preponderance of the evidence is a question we need not, and do not, reach.

not bear on the defendant's conduct in any way, but solely on the conduct of the police.[9]

 Applying the foregoing principles, we conclude that, as to the facts underlying the defense provided by section 11362.5(d), defendant is required merely to raise a reasonable doubt.

This conclusion is supported by a comparison of this defense to other defenses under which the defendant is required merely to raise a reasonable doubt. (See generally Model Pen. Code & Commentaries, com. 3 to § 1.12, p. 192.) Most similar is the defense of possession of a dangerous or restricted drug with a physician's prescription, against a charge of unlawful possession of such a drug. For that defense, a defendant need raise only a reasonable doubt as to his or her possession of the drug in question with a physician's prescription. (*People v. Montalvo, supra,* 4 Cal.3d at p. 333, fn. 3.) Also similar is the defense of lawful acquisition of a hypodermic needle or syringe, against a charge of unlawful possession of such an item. For that defense too, a defendant need raise only a reasonable doubt as to the lawfulness of his or her acquisition of the needle or syringe in question. (*People v. Fuentes, supra,* 224 Cal.App.3d at pp. 1044-1047.) Not dissimilar, from a different perspective, is the defense of prescribing narcotics to an addict under lawful conditions, against a charge of unlawfully prescribing such substances to such a person. For that defense as well, a defendant need raise only a reasonable doubt as to the existence of the conditions in question. (*People v. Lawrence, supra,* 198 Cal.App.2d at p. 62.)

The same conclusion is supported by an examination of the defense provided by section 11362.5(d) itself. This defense plainly relates to the

---

[9]Prior to the enactment of Evidence Code section 501, various decisions discussed statutes that allocated to a defendant the burden of proof as to the facts underlying specified defenses, without indicating what the defendant was required to do. (See, e.g., *In re Lord* (1926) 199 Cal. 773, 776-779 [250 P. 714] [the defense of prescribing narcotics to a habitual user under lawful conditions, against a charge of unlawfully prescribing such substances to such a person]; *People v. Boo Doo Hong* (1898) 122 Cal. 606, 607-609 [55 P. 402] [the defense of possession of a license to practice medicine, against a charge of practicing medicine without a license]; *People v. Marschalk* (1962) 206 Cal.App.2d 346, 349-350 [23 Cal.Rptr. 743] [the defense of a privilege to possess narcotics, against a charge of unlawfully possessing narcotics]; *People v. Martinez* (1953) 117 Cal.App.2d 701, 708 [256 P.2d 1028] [the defense of possession of a license or prescription to possess narcotics, against a charge of unlawfully possessing narcotics]; *People v. Bill* (1934) 140 Cal.App. 389, 392-393 [35 P.2d 645] [the defense of possessing cocaine with a physician's prescription, against a charge of unlawfully possessing cocaine]; cf. *People v. Marquez* (1992) 1 Cal.4th 553, 578-582 [3 Cal.Rptr.2d 710, 822 P.2d 418] [postdating Evid. Code, § 501: placing on the defendant the burden of proof as to the "defense" of minority against imposition or infliction of the death penalty (Pen. Code § 190.5, subd. (a))]; *People v. Ellis* (1929) 206 Cal. 353, 356-359 [274 P. 353] [predating Evid. Code, § 501: allocating to the defendant the burden of proof as to the "defense of minority" by a preponderance of the evidence].)

defendant's guilt or innocence. As stated, the purpose of the statute is: (1) "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of . . . any . . . illness for which marijuana provides relief" (§ 11362.5, subd. (b)(1)(A)); and (2) "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction" (§ 11362.5, subd. (b)(1)(B)). Under section 11362.5(d), qualified patients and primary caregivers "who obtain and use marijuana for medical purposes upon the recommendation of a physician" are exempted not only from "criminal . . . sanction" for possession and cultivation of marijuana, but even from "criminal prosecution" (§ 11362.5, subd. (b)(1)(B)), because their conduct is noncriminal, involving as it does the treatment of "seriously ill" persons who "obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit" therefrom (§ 11362.5, subd. (b)(1)(A)).

As a result of the enactment of section 11362.5(d), the possession and cultivation of marijuana is no more criminal—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug with a physician's prescription. Inasmuch as this statute provides that sections 11357 and 11358, which criminalize the possession and cultivation of marijuana, "shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician" (§ 11362.5(d)), the provision renders possession and cultivation of marijuana noncriminal under the conditions specified.

In sum, the defense provided by section 11362.5(d) relates to the defendant's guilt or innocence, *because it relates to an element of the crime of possession or cultivation of marijuana.* Thus, this defense negates the element of the *possession* or *cultivation* of marijuana *to the extent that the element requires that such possession or cultivation be unlawful.*

Proposition 215's ballot pamphlet materials do not dictate a contrary conclusion. It is true that the proponents of Proposition 215 stated (in their rebuttal to the argument by the measure's opponents) that section 11362.5(d) "gives . . . a defense in court" to qualified patients and primary caregivers "if they can *prove*" its underlying facts. (Ballot Pamp., Gen. Elec., *supra,* rebuttal to argument against Prop. 215, p. 61, some italics omitted.) But, as

Evidence Code section 115 provides, a defendant can "prove" the facts underlying a given defense, i.e., "establish by evidence a requisite degree of belief concerning [such] fact[s] in the mind of the trier of fact," merely by "rais[ing] a reasonable doubt concerning [their] existence or nonexistence . . . ."

Against this conclusion, the People argue that the defense provided by section 11362.5(d) is collateral to a defendant's guilt or innocence. But, as explained, within its scope section 11362.5(d) renders possession and cultivation of marijuana noncriminal. Contrary to the People's implication, the statutory defense simply cannot be likened to a defense such as entrapment, which is "not based on the defendant's innocence" in any way (*People v. Moran, supra,* 1 Cal.3d at p. 760).

We note that *People v. Trippet, supra,* 56 Cal.App.4th at pages 1543-1551, *People ex rel. Lungren v. Peron, supra,* 59 Cal.App.4th at pages 1388-1400, and *People v. Rigo, supra,* 69 Cal.App.4th at pages 412-415, which recognize the defense provided by section 11362.5(d), do not address the issue of the allocation and weight of the burden of proof. CALJIC No. 12.24.1 (1999 rev.) (6th ed. 1996) does indeed state that a defendant bears the burden of proof as to the underlying facts by a preponderance of the evidence. All that is cited in support of this pattern instruction is section 11362.5 and *Trippet.* (Com. to CALJIC No. 12.24.1 (1999 rev.) (6th ed. 1996) pp. 15-16.) Section 11362.5 provides no support. *Trippet* asserts in dictum that "the burden is, of course, on the defendant to raise the defense and prove its elements." (See *People v. Trippet, supra,* 56 Cal.App.4th at p. 1551, fn. 17.) But, as explained, Evidence Code section 115 allows a defendant to "prove" the "elements" of a given defense merely by raising a reasonable doubt as to their existence or nonexistence.

2

We next address defendant's contention that the trial court's instruction on the defense provided by section 11362.5(d), which required him to prove the underlying facts by a preponderance of the evidence, amounted to reversible error.

A trial court must instruct the jury on the allocation and weight of the burden of proof (Evid. Code, § 502; *People v. Simon, supra,* 9 Cal.4th at p. 501 [citing Evid. Code, § 502]; *People v. Figueroa, supra,* 41 Cal.3d at p. 721 [same]), and, of course, must do so correctly. It must give such an instruction even in the absence of a request (see *People v. Simon, supra,* 9 Cal.4th at p. 501), inasmuch as the allocation and weight of the burden of

proof are issues that "are closely and openly connected with the facts before the court, and . . . are necessary for the jury's understanding of the case" (*People v. St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]).

■ Because, as we have concluded, defendant was required merely to raise a reasonable doubt as to the facts underlying the defense in question, the trial court erred by instructing the jury that he was required to prove those facts by a preponderance of the evidence.

■ If a trial court's instructional error violates the United States Constitution, the standard stated in *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065], requires the People, in order to avoid reversal of the judgment, to "prove beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained." (See *People v. Simon, supra*, 9 Cal.4th at p. 506, fn. 11.) But if a trial court's instructional error violates only California law, the standard is that stated in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], which permits the People to avoid reversal unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (See *People v. Simon, supra*, 9 Cal.4th at p. 506, fn. 11.)

■ We have left open the question whether an instructional error like that committed by the trial court in the present case is of federal constitutional dimension or only of state law import (*People v. Simon, supra*, 9 Cal.4th at p. 506, fn. 11) and need not resolve this question here, because the error requires reversal even under the less rigorous *Watson* standard.

■ There is a reasonable probability of a more favorable result within the meaning of *Watson* when there exists "at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result." (*People v. Watson, supra*, 46 Cal.2d at p. 837.)

■ Such an equal balance of reasonable probabilities exists in the present case. Defendant unquestionably was a patient—an "extremely" ill patient who suffered from "diabetes and all its complications." Furthermore, defendant unquestionably possessed and cultivated marijuana on the recommendation of a physician, who advised him to use the substance. What could be questioned, however, was whether defendant possessed and cultivated the marijuana in question entirely *for his own personal medical purposes*. Had the jury properly been instructed that defendant was required merely to raise a reasonable doubt about his purposes instead of proving such purposes by a

preponderance of the evidence, it might have found him not guilty. We come to this conclusion because the jury might have found that defendant raised a reasonable doubt—to wit, whether the 31 marijuana plants would yield a harvest of only about five pounds for a year's supply, in accordance with defendant's testimony and that of his expert witness. The evidence showed that the yield of the plants was uncertain, based as it was on various agricultural and other assessments and projections. In light of such uncertainty, the jury might have entertained a reasonable doubt in defendant's favor.[10]

## IV

For the reasons stated above, we reverse the judgment of the Court of Appeal and remand the cause to the Court of Appeal with directions to reverse the judgment of the trial court and remand the cause for a new trial before a properly instructed jury.

Kennard, J., Werdegar, J., Chin, J., Brown, J., Moreno, J., and Mihara, J.,* concurred.

---

[10]In his briefing in this court, defendant attempts to raise another question that he did not raise in the Court of Appeal, specifically that section 11362.5 preempts the Tuolumne County Sheriff's Department's three-plant policy and renders it invalid. In the circumstances of this case, we need not, and do not, address this issue. The validity of the three-plant policy is an academic question here because, contrary to defendant's claim, there is no basis to infer that the jury found him guilty of possession and cultivation of marijuana merely because of his failure to comply with that policy. The jury did not hear any argument, or receive any instructions, that authorized or even invited it to find him guilty on that basis. Accordingly, we decline to address the question further.

*Associate Justice, Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.